## Case No. 10,770.
### PARRISH v. DANFORD et al.
[1 Bond, 345.] 1

Circuit Court, S. D. Ohio.   April Term, 1860.

EXECUTION LEVY — WRONGFUL REMOVAL—RIGHT OF SHERIFF TO RETAKE — FRAUD — LAW AND FACT — PREFERENCES — INDEMNITY BOND TO SHERIFF—TRESPASSERS.

1. Where a valid levy was made upon property by a sheriff, and it was wrongfully removed from the place where the sheriff had left it, he had a right to take possession of the same

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

wherever he could find it, if he used no more force in doing so than was absolutely necessary, and all who assisted him are also justified.
[Cited in Steers v. Daniel, 4 Fed. 596.]

2. The question of fraud is one of law and fact. The court declares what constitutes a legal fraud, and it is for the jury to say whether the evidence proves the fact of fraud.

3. In Ohio, a man may, under some circumstances, prefer one creditor to another, if it is done in good faith, and no fact appears from which a fraudulent intent can be inferred.

4. No man, knowing himself to be insolvent, can make a valid disposition of his property, except for the benefit of creditors.

5. If there has been a delivery of property and full payment made in good faith, the right of the purchaser will not be interfered with; but if the purchaser has notice of a fraud before getting possession and making payment of the consideration, the creditors may intervene and the contract will be set aside.

6. The execution of a bond of indemnity to a sheriff making a levy, makes the person so executing a trespasser, if the act of the sheriff was illegal. In trespass, all who are liable are liable as principals.

7. If the parties to a sale and purchase of property intend thereby to defraud creditors. the fact that a full consideration was paid will not make it valid.

[This was an action by Isaac Parrish against Samuel Danford and others.]

Mr. Evans, for plaintiff.
Lee & Fisher, for defendants.

CHARGE OF THE COURT: This is an action in trespass brought to recover damages for the unlawful seizure of the goods of the plaintiff. The defendants are Samuel Danford, the sheriff of Noble county, Ohio, John Brownrig, Wm. Brownrig, Hiram Caldwell, and Joseph Caldwell. Wm. C. Okey was also a defendant, but has been discharged. The defendants deny the allegations in the plaintiff's declaration by a plea of not guilty. The ground on which the plaintiff seeks to recover is, that Danford illegally levied on his property to satisfy an execution against other persons, and that the other defendants were aiders and abettors in the trespass. It is not controverted that if the property taken was the property of the plaintiff, the defendants are liable as trespassers. And, if liable at all, they are all liable, as in trespass all are principals. If the act was illegal, all who were present and aided in it are guilty. One of the defendants, John Brownrig, was not present, but he is party to a bond of indemnity to the sheriff, which makes him a trespasser if the act of the sheriff was illegal.

It appears that on October 20, 1859, an execution issued on a judgment in the common pleas of Noble county, in favor of Brooks, Fahnestock, and others, against John W. Brownrig, Edward M. Parrish, and John Brownrig, for more than $1,100 and costs, and was put into the hands of the sheriff on that day. On the 2d of November, the sheriff levied on a stock of goods in the town of

Sharon, in Noble county, which had been owned by E. M. Parrish and John Brownrig, who had been in business as the firm of Brownrig & Parrish, to satisfy the execution of Brooks, Fahnestock & Co. Before the levy, that is, on October 28, Brownrig & Parrish made a sale of these goods to the plaintiff, and the validity of that sale is the only question now in controversy. The goods were not removed at the time of the levy, but remained in the room in which Brownrig & Parrish had done business till the 14th of November, when they were removed by the sheriff to a room in Hopper's tavern, and were under lock and key there till the 20th of December, when they were removed by the plaintiff without the consent or knowledge of the sheriff, to a room in the basement of the Masonic Hall, in the town of Sharon. And on the 22d of December, the sheriff, with others as his assistants, forcibly, by breaking open the outer door, entered the room, retook the goods, and removed them to the town of Caldwell, the county seat of Noble county. As to these facts there is no controversy, and the question is, was the sheriff and his assistants guilty of a trespass in forcibly entering the Masonic Hall basement and retaking the goods? There is no dispute as to the regularity of the original levy. Having an execution against these defendants, the sheriff had a right to levy on the property of any one of the defendants, and the levy was a legal one, if the goods were the property of Brownrig & Parrish at the time they were levied on. It is clear, too, that if the original levy was valid, and the property was wrongfully removed from the place where the sheriff had left it, he had a right to reclaim it and take possession of it wherever he could find it, if he used no more force in doing so than was absolutely necessary. And if the sheriff was justified in retaking the property, all who assisted him are also justified. It is apparent that this case turns wholly on the question of the title to this property on the 2d of November, when the levy was made. If it was the property of the plaintiff on that day, the sheriff and all who aided him were trespassers, and liable for the injury sustained by plaintiff. If it belonged to the defendants in execution, the sheriff has done no more than his duty. A sheriff is bound to levy on the property of the defendant in execution, and is liable if he levies on the property of another person. In this case there was a claim of property interposed by the plaintiff under the statute, and a trial by a jury requested. The sheriff being indemnified, retained the property and refused to call a jury. The bond is an indemnity to the sheriff for selling the goods. The sheriff had an undoubted right to pursue this course, but in doing so exposed himself to an action of trespass and to damages, if the claimant of the property made good his title. The jury may consider whether the refusal of the sheriff to call a jury, as requested, is evidence of malice or a spirit of oppression, and this opens the way for the consideration of the question of the ownership of the property on the 2d of November. The plaintiff claims it under a written contract of sale to him by E. M. Parrish and John W. Brownrig, dated October 28, 1859, which was a few days before the levy. By this contract it is agreed, in substance, that Brownrig & Parrish sell to the plaintiff their entire stock of goods, estimated at $3.000, in consideration of which the plaintiff was to convey to Brownrig & Parrish twenty-five lots in Parrish City, in Iowa, at $10 a lot, and other lands in Harrison county, in that state, such as Brownrig & Parrish shall select out of 1,200 acres, at from $4.50 to $6 an acre. And it is provided that if they are not satisfied with the land, the plaintiff shall pay $3.000 in six, twelve, and eighteen months, from the time they make their election. And they agreed to furnish money to pay for the freight of the goods to Iowa, which was to be refunded in sixty days. On the 24th of November a supplemental contract was signed by plaintiff, and by E. M. Parrish, acting for the firm of Brownrig & Parrish, which recites that Brownrig & Parrish had failed to advance money to pay the freight, and that such part of the contract was released. It was then agreed that Iowa lands to the amount of $1,200 should be conveyed to E. M. Parrish, and $900 to the Brownrigs in land, and after deducting some credits to the plaintiff, there was due from him a balance of $441, which was payable in money. Was this a bona fide and valid sale? Fraud vitiates all contracts. The question of fraud is one of law and fact. The court declares what constitutes a legal fraud, and it is for the jury to say whether the evidence proves the fact of fraud. Fraud will not be presumed, and must be affirmatively proved by the party who avers it. The law guards the rights of creditors with great vigilance, and declares all sales and transfers made to hinder, delay, or defraud them absolutely void. The theory of the law is, that no man, knowing himself to be insolvent, can make a valid disposition of his property, except for the benefit of creditors. In Ohio, a man may, under some circumstances, prefer one creditor to another, if it is done in good faith, and no fact appears from which a fraudulent intent can be inferred. How far one who is a purchaser, without notice of any fraudulent intent on the part of a vendor, shall be protected in the transaction, is sometimes a question of great difficulty and nicety, and must depend somewhat on the circumstances of the case. If there has been a delivery of the property, and full payment made in good faith, the right of the purchaser will not be interfered with; but if the purchaser has notice of the fraud before getting possession and making the payment of the consideration, the creditor may intervene, and the contract will be set aside. In the present

case, it is not controverted that John B. Brownrig and E. M. Parrish each owed and were liable, individually, at the time of the sale to the plaintiff, for much more than they were worth; but the plaintiff insists that the firm was not insolvent, and that if not insolvent. though the effect of the sale would be to defeat and defraud individual creditors, the sale is valid unless the plaintiff had knowledge that such would be the effect, and that the vendors intended a fraud. I do not see readily how this distinction can be made, if the jury shall find that the firm was not insolvent. The insolvency of the individual members of a firm is equivalent to the insolvency of the firm itself, since it is clear that the whole assets and property of the individuals are liable for the whole amount of the firm debts. In other words, I can not understand how a firm can be said to be solvent if there exists an individual indebtedness of its members which exceeds the entire assets and property of the firm. It is clear that a firm, with a knowledge that its members are individually insolvent, has no right, moral or legal, to dispose of firm property under circumstances that will render such disposition a fraud on the creditors of the individual members.

It will be for the jury to inquire: 1. Whether Brownrig & Parrish, individually and as partners, were in debt beyond their means of payment: 2. Whether the plaintiff, from all the circumstances in proof, is chargeable with notice of such insolvency. If the jury are satisfied of the insolvency of Brownrig & Parrish. there is a strong presumption of fraud, so far as they are concerned. in making the sale to the plaintiff. It is not intended to refer to all the facts connected with this sale. The inquiry for the jury will be. did Brownrig & Parrish intend by the sale of the property to put it beyond the reach of their creditors? In determining this inquiry the jury will look to the facts: 1. Were they insolvent? 2. Was the property they were to receive so situated as that it could be made available to their creditors? In connection with the last inquiry. the jury will very properly consider the fact that the conveyances made by Stephen Parrish of the lands to be given by the plaintiff under the contract, were made to the wives of Brownrig and E. M. Parrish. This would seem clearly to justify the inference that the land was intended to be placed beyond the reach of creditors. If the jury are satisfied that there was a fraudulent purpose by Brownrig & Parrish in making this sale, their next inquiry will be, is the plaintiff chargeable with a knowledge of the fraud? It is insisted by plaintiff's counsel that plaintiff had been residing in a distant state for several years. and returning to Noble county, found Brownrig & Parrish in possession of a store,

doing business, and in credit, and had no reason to suppose they were insolvent when he made the purchase, and is not chargeable with knowledge of the insolvency, or of any fraudulent intent in selling these goods. This subject has been so fully discussed that I will not detain the jury by restating the evidence. It will be for the jury to say whether, from all the facts, the plaintiff was a party to this transaction. with the knowledge that it would result in defrauding the creditors of Brownrig & Parrish. If they decide this affirmatively, it will result, necessarily, that the sale was fraudulent and void. If, on the other hand. the jury find the plaintiff had no grounds to conclude or suspect a fraud in the sale of the goods, and that he has paid a good consideration for them, the sale. so far as he is concerned, may be sustained. The plaintiff's knowledge can only be deduced from the circumstances of the case; but may be so presumed if the facts justify it. It is, however, insisted that the plaintiff was himself insolvent and unable to give or pay any fair consideration for the goods, and that thus he had no right to make the purchase, and that it was a fraud on his part to make such purchase. The court will not refer to the evidence on this point, but will say that if the plaintiff was insolvent at the time of the purchase, it would be a clear indication of fraud on his part. The jury will remember the evidence on this subject. It would appear that he has dealt largely in western lands, and has laid out a city in Iowa. Deeds have been produced showing the legal title to these lands to be in his brother. Stephen Parrish. It is claimed, however, that the land is really the plaintiff's, and that it is of value. If the jury find a fraudulent intent by the parties to this sale and purchase, that is, a design to defraud creditors, the fact that a full consideration was paid will not make it valid. If the jury find the defendants trespassers. they will give such damages as they think just. The damages should be the value of the property taken from the plaintiff, and the expenses and trouble in prosecuting this suit. If the jury believe that the sheriff and those whose assistance he required have acted in a wanton and oppressive manner. they may give exemplary damages. If the jury believe that in issuing the writs of attachment, or in any other proceedings connected with this transaction, the defendants. or any of them. have been parties to a combination or conspiracy to injure the plaintiff. it may justly form an element in the assessment of damages.

The jury returned a verdict for defendants.